UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

PAULA HOGDEN,

     Plaintiff,

v.           Case No. 20-CV-1486

KILOLO KIJAKAZI,
**Acting Commissioner of the Social Security Administration,**

     Defendant.

---

## DECISION AND ORDER

**1. Introduction**

Alleging she has been disabled since June 6, 2014 (Tr. 13), plaintiff Paula Hogden seeks disability insurance benefits. Her date last insured was December 31, 2019. After her application was denied initially (Tr. 74-85) and upon reconsideration (Tr. 86-96), a hearing was held before Administrative Law Judge (ALJ) Michael Schaefer on January 23, 2020 (Tr. 28-73). On March 9, 2020, the ALJ issued a written decision concluding that Hogden was not disabled. (Tr. 10-24.) After the Appeals Council denied her request for review on June 25, 2020 (Tr. 1-3), Hogden filed this action. All parties have consented to

the full jurisdiction of a magistrate judge (ECF Nos. 8, 10), and the matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled, an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that Hogden had not engaged in substantial gainful activity since her alleged onset date. (Tr. 15.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The ALJ concluded that Hogden has the following severe impairments: "degenerative disc disease, osteoarthritis/bursitis of the right hip, and fibromyalgia." (Tr. 16.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational

requirement, 20 C.F.R. § 404.1509, the claimant is disabled. 20 C.F.R. § 404.1520(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 404.1520(e). The ALJ found that Hogden's impairments did not meet or medically equal a listed impairment. (Tr. 16-17.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. § 404.1545(a)(1). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Hogden has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant may require the option to alternate positions at the work station between sitting and standing as often as every 15 to 30 minutes for approximately 5 minutes at a time, but will not need to leave the work station or otherwise be off-task from work performance as a result. The claimant can frequently balance. She can occasionally climb ladders, ropes or scaffolds, occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl. She must avoid more than occasional exposure to extremes of cold, heat, wetness, humidity, vibration, pulmonary irritants (including fumes, odors, dusts and gases), poorly ventilated areas, or workplace hazards (including moving machinery and unprotected heights).

(Tr. 17.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560. The ALJ concluded that:

> the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant may require the option to alternate positions at the work station between sitting and standing as often as every 15 to 30 minutes for approximately 5 minutes at a time, but will not need to leave the work station or otherwise be off-task from work performance as a result. The claimant can frequently balance. She can occasionally climb ladders, ropes or scaffolds, occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl. She must avoid more than occasional exposure to extremes of cold, heat, wetness, humidity, vibration, pulmonary irritants (including fumes, odors, dusts and gases), poorly ventilated areas, or workplace hazards (including moving machinery and unprotected heights).

(Tr. 17.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). At this step, the ALJ concluded that Hogden "was capable of performing past relevant work as a payroll supervisor and truck dispatcher/broker." (Tr. 22.) Therefore, Hogden was not disabled.

3. **Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

4. **Analysis**

   **4.1. Symptom Severity**

   Using frequently employed boilerplate, the ALJ stated,

   After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 19.) He then went on to provide specific reasons why he found Hogden's symptoms not to be as severe as she reported. He noted, in part, that recent imaging showed only mild abnormalities in her back, which was an improvement over prior imaging. (Tr. 19.) She had a "fairly full range of motion in her lumbar spine during examination." (Tr. 19.)

She "obtained some relief from physical therapy, radio frequency ablations, and medial branch blocks, which the claimant testified generally last approximately 4 months" and "regularly presented to her providers with normal lumbar lordosis." (Tr. 19-20.)

As for Hogden's hip pain, the ALJ noted that imaging showed "a normal right hip," and testing showed that she had full strength, normal range of motion, and normal balance. (Tr. 20.) The ALJ continued: "The claimant's conditions did not prevent her from being independent with basic activities of daily living and general activities of daily living, such as cleaning the house, doing laundry, shopping, driving a car, preparing simple meals, watching television, reading, going out to dinner, and attending social events such as church and her children's events." (Tr. 20.) He summarized his conclusions by stating:

> Thus, given the claimant's diagnostic imaging showing mostly mild to moderate findings, physical examinations showing generally good objective functioning, the claimant reporting that she received approximately four months of relief with treatments as well as other documented activities of daily living, I find she is not limited physically as she alleges and instead remains capable of performing a range of light work for the reasons explained herein.

(Tr. 20.)

An ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p. "Second, once an underlying physical

or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work related activities …." SSR 16-3p. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p.

The ALJ must also consider, to the extent they are relevant, the following factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p.

Hogden argues that the ALJ erred by not addressing certain details that tend to support her allegations regarding the severity of her symptoms. She notes that she has been obtaining treatment from a pain specialist for over seven years but was still in

7
Case 2:20-cv-01486-WED   Filed 01/05/22   Page 7 of 14   Document 32

constant pain. (ECF No. 23 at 6.) Although the ALJ noted that she obtained some relief with certain treatments, the relief was temporary. (ECF No. 23 at 7.) She was prescribed strong medications, yet she remained in constant pain. (ECF No. 23 at 7-8.)

Hogden also notes that, while the ALJ emphasized the normal findings related to her hip pain, there were other abnormal findings that the ALJ ignored. (ECF No. 23 at 8.) As for her fibromyalgia, she argues that the absence of objective evidence was not inconsistent with the alleged severity of her symptoms. (ECF No. 23 at 8-9.) Finally, she argues that the ALJ ignored the limitations associated with her activities of daily living. (ECF No. 23 at 9-10.)

As is commonly true, the evidence here cuts both ways. That the ALJ chose one side over another does not suggest error; "contrary conclusions may each be supported by substantial evidence." *Hall v. Saul*, No. 19-CV-1780, 2020 U.S. Dist. LEXIS 226466, at *14 (E.D. Wis. Dec. 3, 2020) (quoting *Wolvin v. Saul*, No. 18-CV-1285, 2019 U.S. Dist. LEXIS 171953, at *5-6 (E.D. Wis. Oct. 3, 2019)). In explaining why he found Hogden's symptoms not to be as severe as she alleged the ALJ naturally emphasized the evidence that he found to support that conclusion. *See Plymire v. Kilolo Kijakazi*, No. 20-CV-574, 2021 U.S. Dist. LEXIS 138391, at *11 (E.D. Wis. July 26, 2021). While he did not explicitly discuss all the contrary evidence, he was not required to. *See Rennaker v. Saul*, 820 F. App'x 474, 480 (7th Cir. 2020); *Plymire*, 2021 U.S. Dist. LEXIS 138391, at *10-11. The ALJ errs only if he engages in impermissible cherry-picking by wholly ignoring a line of contrary evidence. *Plymire*,

2021 U.S. Dist. LEXIS 138391, at *11 ("An ALJ does not err merely because he fails to mention evidence that might be inconsistent with his conclusion. Impermissible cherry-picking requires more—*e.g.*, a sweeping and systemic disregard of contrary evidence or a failure to consider an entire line of evidence.").

The ALJ acknowledged contrary evidence throughout his decision, and amidst the relevant discussion of symptom severity he noted facts, including Hogden's reduced range of motion and tenderness in her lumbar spine, radiculopathy, and prior pain radiating into her legs. (Tr. 19-20.) While Hogden makes much of the fact that the relief she obtains for injections lasts only four months, the ALJ explicitly acknowledged that the relief lasted only four months. (Tr. 29.) While Hogden seems to look at the four months and see a glass half empty, the ALJ seemed to see the glass as half full. Such a disagreement is not error.

Hogden also argues that the ALJ did not properly consider her fibromyalgia because he relied primarily on objective tests and fibromyalgia often will not produce objective abnormalities. (ECF No. 23 at 8-9.) She also cites SSR 12-2p (ECF No. 23 at 6, 11), which discusses the evaluation of fibromyalgia. However, she fails develop any argument of alleged error regarding SSR 12-2p. Insofar as she intended to argue that remand is required because the ALJ failed to comply with SSR 12-2p, any such argument is forfeited as undeveloped. *See Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018).

Moreover, the ALJ did discuss Hogden's fibromyalgia. He noted that, although at various times Hogden exhibits between 14 and 16 of the 18 tender points consistent with fibromyalgia (Tr. 19), during the consultative examination she did not[1] exhibit any tender points (Tr. 20). This was an adequate basis for concluding that her fibromyalgia symptoms were not as severe as she alleged. Moreover, it is unclear what specific symptoms Hogden attributes to her fibromyalgia. Based on her testimony at the hearing, it appears that she attributes her symptoms primarily to be her back and hip problems. Even in her briefs to this court it is unclear what limitations she attributes to fibromyalgia.

As for her daily activities, Hogden criticizes the ALJ for not noting the limitations she had in doing these activities. (ECF No. 31 at 6-7.) While an ALJ may err if he misrepresents the nature of her activities by ignoring limitations on or consequences of those activities, *see Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (remanding when the ALJ relied on the plaintiff taking a "daily walk," vacuuming, and shopping to conclude that symptoms were not as severe as alleged but overlooked that the "walk" was to the mailbox, vacuuming lasted four minutes, and shopping was done with a motorized cart and plaintiff could carry only one bag at a time), remand is not required simply because the ALJ did not explicitly restate every qualification the claimant placed on her activities.

---

[1] The ALJ wrote, "Furthermore, despite the claimant's reports of diffuse body pain, she exhibited full (5/5) strength and good range of motion (4F/3; 5F/9). Additionally, during a consultative examination, the examiner noted the claimant did identify any classic tender points associated with a positive fibromyalgia diagnosis (3F/2)." (Tr. 20.) The cited document states, "Evaluation for fibromyalgia did not identify any classic tender points associated with a positive diagnosis." (Tr. 568.) Given this and the context of the ALJ's statement, it is clear that the ALJ intended to write "not" following "did" in the second sentence.

10

The ALJ stated:

> The claimant's conditions did not prevent her from being independent with basic activities of daily living and general activities of daily living, such as cleaning the house, doing laundry, shopping, driving a car, preparing simple meals, watching television, reading, going out to dinner, and attending social events such as church and her children's events (3E).

(Tr. 20.) It would have been more complete had the ALJ noted that Hogden described the housework as "light," her son carries the laundry, she shops for 15 to 20 minutes at a time, she makes sandwiches and frozen meals only weekly, she goes out to dinner monthly, and attends events weekly. (Tr. 195-97.) But these were hardly material qualifications that the ALJ was required to acknowledge. The ALJ did not materially misrepresent the nature of Hogden's activities.

Overall, the ALJ's decision "contain[s] specific reasons for the weight given to the individual's symptoms," is "consistent with and supported by the evidence," and is "clearly articulated" so the court "can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. "The fact that a different adjudicator might have reached a different conclusion is not a reason for the court to upset the ALJ's decision." *Hall v. Saul*, No. 19-CV-1780, 2020 U.S. Dist. LEXIS 226466, at *15-16 (E.D. Wis. Dec. 3, 2020). Given the special deference that the court must afford this aspect of the ALJ's decision, because the court does not find it to be "patently wrong," the court cannot upset it. *Apke v. Saul*, 817 F. App'x 252, 257 (7th Cir. 2020).

### 4.2. Residual Functional Capacity

Hogden contends that it is unclear where the ALJ's RFC finding came from. (ECF No. 23 at 10.) She argues that there is no evidence supporting the ALJ's conclusion that alternating between sitting and standing as often as every 15 to 30 minutes for approximately 5 minutes at a time would address her back pain. (ECF No. 23 at 10-11.) The ALJ rejected the medical opinions in the record, which found that Hogden was capable of light work, and he did not point to evidence supporting the view that she could stand or walk for at least two hours in a workday. (ECF No. 23 at 11.)

The court agrees that the ALJ failed to adequately explain the basis for his conclusion that "[d]ue to the claimant's degenerative disc disease of the lumbar spine and hip dysfunction the claimant may require the option to alternate positions at the work station between sitting and standing as often as every 15 to 30 minutes for approximately 5 minutes at a time, but will not need to leave the work station or otherwise be off-task from work performance as a result." (Tr. 19.) The ALJ does not point to a medical opinion supporting this limitation. Nor does he identify any other evidence, such as testimony from Hodgen, supporting the conclusion that alternating positions relieves her pain or that five minutes is enough to provide relief from any pain she is experiencing.

But any such error is harmless because Hogden likewise fails to point to any evidence supporting a sit/stand option. Thus, as presented by Hogden, the ALJ's error is that he found an additional limitation that was not supported by the evidence. Such an

error would be harmless; there would be no reason to remand so an ALJ could reassess Hogden's ability to work with *fewer* limitations than set forth in the RFC.

Hogden also correctly notes that the ALJ did not articulate a basis for the specific temporal aspects of the sit/stand limitation (*i.e.*, shifting between sitting and standing every 15 to 30 minutes for 5 minutes at a time). Again, any such error is harmless. Hogden seems to argue that the court should remand because the ALJ might find temporal limitations that are work preclusive. (ECF No. 31 at 2.) But because Hogden has shown that the sit/stand limitation was without a factual basis, the details of the limitation are immaterial.

Going beyond Hogden's arguments, the court notes that Hogden's hearing testimony supports a sit/stand option. She testified that she is limited to driving an hour at a time because she cannot sit for any longer. (Tr. 43.) She testified that she cannot work standing up (Tr. 41) but, if she has to, she can stand for about 10 minutes at a time (Tr. 58) and she relieves the pain from sitting by standing for a short time (Tr. 43-44). This evidence supports the specific sit/stand limitations and RFC that the ALJ found. There is no basis to believe that remand would result in a materially different limitation.

5. **Conclusion**

It is worth repeating that the court's review of the final decision of the Commissioner is limited and deferential. It is not enough for the plaintiff to show that the ALJ could have reached a different conclusion or even that the court, if in the ALJ's

position, would have decided the matter differently. The ALJ's decision is supported by substantial evidence and Hogden has failed to demonstrate that the ALJ committed a material error of law. Accordingly, the court must affirm the final decision of the Commissioner.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 5th day of January, 2022.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge